UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CITY OF EAST POINT, et al.,

        Plaintiffs,

    v.

CERTAIN UNDERWRITERS AT
LLOYD'S LONDON,

        Defendant.

CIVIL ACTION NO.
1:20-CV-04916-JPB

## ORDER

This matter is before the Court on Certain Underwriters at Lloyd's London's ("Defendant") Motion for Summary Judgment [Doc. 33]. This Court finds as follows:

## PROCEDURAL HISTORY

The City of East Point, Georgia ("Municipal Plaintiff") filed its Complaint for Declaratory Judgment on September 15, 2020, in the Superior Court of Fulton County, Georgia. [Doc. 1-1, p. 2]. Although the Complaint originally listed as defendants Jimmy L. Davis, individually and on behalf of Jikem Davis, the estate of Jimaris L. Davis and Wendy Mack, individually and on behalf of her minor child, Ernest Jeffries ("Tort Plaintiffs"), these parties were subsequently realigned as plaintiffs alongside Municipal Plaintiff (collectively, "Plaintiffs"). [Doc. 10].

Defendant removed the case to this Court on December 4, 2020.  [Doc. 1].

On June 30, 2021, the Court stayed the case pending resolution of a substantially

similar case under review by the Supreme Court of Georgia.  [Doc. 22].  Following

the issuance of that decision, and upon motion by Municipal Plaintiff, the Court

reopened this case on March 24, 2023.  See [Doc. 27].  On August 23, 2023,

Defendant filed the instant Motion for Summary Judgment.  [Doc. 33].

## FACTS

This declaratory judgment action relates to potential liability in an

underlying suit filed by Tort Plaintiffs in the Superior Court of Fulton County,

Georgia, on June 26, 2018 (the "Underlying Suit").  See [Doc. 35-2, pp. 1–8].  In

the Underlying Suit, Tort Plaintiffs allege that on June 27, 2016, two police

officers employed by Municipal Plaintiff ("Officers") were pursuing a stolen

vehicle operated by Ana K. Bolton ("Bolton") when Bolton struck a vehicle

operated by Tort Plaintiffs.  Id. at 1–2.  The collision caused fatal injuries to

Jimaris Davis and severe injuries to Jimmy Davis.  Id. at 2.  As a result, Tort

Plaintiffs brought suit against Bolton, Municipal Plaintiff and Officers for injuries

sustained from the accident.[1]  Id. at 3.

---

[1] Officers have since been dismissed as defendants in the Underlying Suit, leaving only
Municipal Plaintiff and Bolton as defendants.  Id. at 7–8.  Defendant is not a party to the
Underlying Suit.

At the time the collision occurred, Municipal Plaintiff maintained a liability insurance policy with Defendant ("Policy").  See id. at 10; [Doc. 33-2].  The Policy provided coverage for automobile-related liability, containing an aggregate limit of $1,800,000.[2]  [Doc. 35-2, p. 10].  Section III of the Policy, which addresses Automobile Liability, provides, in relevant part:

> The Underwriters agree, subject to the policy limitations, terms, conditions, to indemnify the ASSURED for all sums which the ASSURED is obligated to pay by reason of the liability arising from the ownership, operation, maintenance or use of an AUTOMOBILE imposed upon the ASSURED by law or assumed by the ASSURED under contract or agreement, including non-owned and hired AUTOMOBILES, for damages direct or consequential, and expenses, all as more fully defined by the term ULTIMATE NET LOSS, arising out of any OCCURRENCE on account of BODILY INJURY or PERSONAL INJURY, suffered or alleged to have been suffered by any person(s) or organization(s) and/or PROPERTY DAMAGE, arising out of the ownership, operation, maintenance or use of any AUTOMOBILE, occurring during the PERIOD OF INSURANCE.

Id. at 15–16.  The Policy requires Municipal Plaintiff to pay a $200,000 Self-Insured Retention ("SIR") and a $100,000 Corridor Retention, which apply on a per occurrence basis, before Defendant's duty to indemnify is triggered.  Id. at 11.  Finally, the Policy contains Endorsement 10, the Non-Waiver of Governmental Immunity Endorsement, which provides, in pertinent part:

---

[2] Although the Policy also provides coverage for a variety of other potential claims, the instant case concerns the Policy's "Automobile Liability" section and coverage.  See [Doc. 33-2]

> It is understood and agreed that the ASSURED shall not waive, either in the adjustment of claims or in the defense of SUIT(S) against the ASSURED, any governmental immunity, of the ASSURED, unless Underwriters and the ASSURED mutually agree, in writing, to do so.

Id. at 16–17.

On September 15, 2020, Municipal Plaintiff filed the instant action against Defendant seeking a declaration about the extent to which Defendant would be liable under the Policy for damages in the Underlying Suit.  See [Doc. 1-1].  The crux of the dispute is this:  whether, in purchasing the Policy, Municipal Plaintiff waived its sovereign immunity in the Underlying Suit up to $1,800,000, pursuant to O.C.G.A. § 36-92-2(d)(3), or whether the $700,000 statutory limit provided for in O.C.G.A. § 36-92-2(a)(3) applies.[3]  See [Doc. 1-1, pp. 5–7]; see also [Doc. 33-3, p. 23]; [Doc. 35, p. 13].  Secondarily, if the $700,000 statutory cap applies, Municipal Plaintiff also asks this Court to decide whether the Policy's applicable retentions further reduce available limits to $400,000.[4]  See [Doc. 1-1, p. 6].

---

[3] Section 36-92-2(a)(3) establishes an automatic waiver of sovereign immunity for losses arising out of claims for the negligent use of covered motor vehicles up to $700,000 for the bodily injury or death of two or more persons in a single occurrence.  See O.C.G.A. § 36-92-2(a)(3).  Section 36-92-2(d)(3), however, provides that a government entity may *increase* its immunity waiver to the extent that it "purchases commercial liability insurance in an amount in excess of the waiver. . . ."  See O.C.G.A. § 36-92-2(d)(3).

[4] Municipal Plaintiff also initially alleged that Defendant improperly changed the amount of the Policy's SIR from $200,000 to $300,000; however, the parties appear to have since come to agree that Municipal Plaintiff owes a total of $300,000 in retention payments,

On June 30, 2021, the Court stayed this proceeding pending the resolution of a similar Supreme Court of Georgia case captioned Atlantic Specialty Insurance Company v. City of College Park. 869 S.E.2d 492 (Ga. 2022). In that case, the court addressed whether a local government entity waived sovereign immunity under O.C.G.A. § 36-92-2(d)(3) by purchasing a liability policy with a limit in excess of the statutory waiver despite provisions in the policy indicating that the parties did not intend to waive sovereign immunity. See id. The Supreme Court issued its ruling on February 15, 2022, deciding that sovereign immunity was not waived through purchase of the policy. Id. at 500; [Doc. 35-2, p. 9].

In its Motion for Summary Judgment, Defendant seeks a similar ruling, asking this Court to declare that Endorsement 10 prevents the Policy from waiving sovereign immunity beyond the $700,000 cap provided for by O.G.C.A. § 36-92-2(a)(3) and that Defendant's indemnity obligation is limited by the SIR and Corridor Retention.[5]

including the $200,000 Self-Insured Retention and $100,000 Corridor Retention. See [Doc. 35, p. 11].

[5] Defendant also raises an "alternative" argument in favor of summary judgment "to the extent [Municipal Plaintiff] asserts that it voluntarily waived O.G.C.A § 36-92-2(a)(3)'s sovereign immunity cap." [Doc. 33-3, pp. 21–23]. Municipal Plaintiff made clear in its response to Defendant's motion that it makes no such assertion. [Doc. 35, pp. 1–2]. Thus, even assuming such a question would be properly before this Court, the Court declines to address Defendant's alternative argument.

In response, Municipal Plaintiff argues: (1) Endorsement 10 is ambiguous and is materially distinct from the non-waiver provisions at issue in <u>Atlantic</u>; and (2) assuming the $700,000 limit applies, it is unclear whether Defendant would be responsible for paying $700,000 on top of the retentions or only an additional $400,000.  [Doc. 35, pp. 5–12].  Ultimately, with respect to whether the $700,000 statutory limit or the Policy's $1,800,000 aggregate limit applies, Municipal Plaintiff, in its summary judgment response, does not advocate for a particular outcome; rather, Municipal Plaintiff contends that the Policy does not provide for a clear answer under the law and seeks this Court's determination "so that [Municipal Plaintiff] will know what funds are potentially available to settle the claim."  [Doc. 35, pp. 2, 12–13].

Tort Plaintiffs, on the other hand, have consistently argued that the applicable limit is clearly $1,800,000 under the Policy and O.C.G.A. § 36-92-2(d)(3), given that the subsection provides for an increase in a local government's sovereign immunity waiver when it purchases commercial liability insurance in an amount in excess of the statutory waiver.  <u>See</u> [Doc. 2, pp. 2–3]; [Doc. 37, p. 8].  In other words, because the Policy limit here—$1,800,000—exceeds the applicable statutory immunity waiver—$700,000—Tort Plaintiffs assert that sovereign immunity has been waived by Municipal Plaintiff up to the value of the Policy

limit, $1,800,000.  Thus, Tort Plaintiffs filed a separate response in opposition to summary judgment.  [Doc. 37].  In it, Tort Plaintiffs argue:  (1) the Policy unambiguously waives sovereign immunity; (2) alternatively, the Policy is ambiguous and must be construed against the insurer; and (3) regardless of the Policy's terms, the Court should find that Municipal Plaintiff unilaterally waived sovereign immunity in the amount of $1,800,000 in this case.  Id. at 6–14.

Defendant's Motion for Summary Judgment is now ripe for review.

## DISCUSSION

### A. Legal Standard

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case."  Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Ultimately, "[t]he basic issue before the court on a motion for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is

so one-sided that one party must prevail as a matter of law.'"  <u>Allen</u>, 121 F.3d at

646 (citation omitted).

Here, the parties agree that no material facts are in dispute and the instant

action should be decided by the Court as a matter of law.  [Doc. 33-3, p. 11]; [Doc.

35, p. 2]; <u>see also</u> [Docs. 37, 37-2].

## B. Insurance Contract Construction

Under Georgia law, construction of insurance contracts is a question of law

for the Court.[6]  <u>Selective Way Ins. Co v. Litig. Tech., Inc.</u>, 606 S.E.2d 68, 70 (Ga.

Ct. App. 2004).  Insurance contracts "are interpreted by [the] ordinary rules of

contract construction."  <u>Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.</u>, 498

S.E.2d 492, 494 (Ga. 1998).  Construction of a contract requires three steps:

> First, the trial court must decide whether the language is clear and
> unambiguous.  If it is, no construction is required, and the court simply
> enforces the contract according to its clear terms.  Next, if the contract
> is ambiguous in some respect, the court must apply the rules of contract
> construction to resolve the ambiguity.  Finally, if the ambiguity remains
> after applying the rules of construction, the issue of what the ambiguous
> language means and what the parties intended must be resolved by a
> jury.

<u>Envision Printing, LLC v. Evans</u>, 786 S.E.2d 250, 252 (Ga. Ct. App. 2016)

(quoting <u>Gen. Steel v. Delta Bldg. Sys.</u>, 676 S.E.2d 451, 453 (Ga. Ct. App. 2009)).

---

[6] The parties agree that Georgia law governs this dispute.

With respect to the first step, "[t]he court [initially] looks to the four corners of the agreement to ascertain the meaning of the contract from the language employed." Brogdon v. Pro Futures Bridge Cap. Fund, L.P., 580 S.E.2d 303, 306 (Ga. Ct. App. 2003). In that analysis, "[w]ords generally [are ascribed] their usual and common signification." O.C.G.A. § 13-2-2(2). "[W]here the language of [the] contract is clear, unambiguous, and capable of only one reasonable interpretation, no construction is necessary or even permissible by the trial court." Ainsworth v. Perreault, 563 S.E.2d 135, 140–41 (Ga. Ct. App. 2002); see also Triple Eagle Assocs., Inc. v. PBK, Inc., 704 S.E.2d 189, 195–96 (Ga. Ct. App. 2010) (stating that "where the terms of a written contract are plain and unambiguous, a court must confine itself to the four corners of the document to ascertain the parties' intent, and is not permitted to strain the construction of a contract, so as to discover an ambiguity" (internal punctuation omitted)); Tripp v. Allstate Ins. Co., 584 S.E.2d 692, 694 (Ga. Ct. App. 2003) (stating that the plain meaning of unambiguous terms "must be given full effect, regardless of whether they might be beneficial to the insurer or detrimental to the insured" (quoting Grain Dealers Mut. Ins. Co. v. Pat's Rentals, 505 S.E.2d 729, 730 (Ga. 1998))).

With respect to the second step, an "[a]mbiguity exists where the words used in the contract leave the intent of the parties in question—i.e., that intent is

uncertain, unclear, or is open to various interpretations." <u>Gen. Steel</u>, 676 S.E.2d at 453; <u>see also</u> <u>ESI Cos., Inc. v. Fulton County</u>, 609 S.E.2d 126, 129 (Ga. Ct. App. 2004) ("Ambiguity in a contract may be defined as duplicity, indistinctness, and uncertainty of meaning or expression.").  A jury question does not, however, automatically arise if the court finds that the contract is ambiguous.  <u>See</u> <u>Envision Printing</u>, 786 S.E.2d at 252.  Instead, the court must first apply the rules of construction to resolve the ambiguity.  <u>Id.</u>

To that end, "[t]he cardinal rule of construction is to ascertain the intention of the parties."  O.C.G.A. § 13-2-3; <u>see also</u> <u>St. Charles Foods, Inc. v. Am.'s Favorite Chicken Co.</u>, 198 F.3d 815, 820 (11th Cir. 1999) ("Enforcement of the parties' intent is superior to the other rules of construction . . . ." (citing <u>Hunsinger v. Lockheed Corp.</u>, 386 S.E.2d 537, 539 (Ga. Ct. App. 1989))).  In the context of an insurance policy, an ambiguity is "strictly construed against the insurer as drafter of the document" as is any exclusion from coverage invoked by the insurer. <u>Richards v. Hanover Ins. Co.</u>, 299 S.E.2d 561, 563 (Ga. 1983).  The insurance policy is also "read in accordance with the reasonable expectations of the insured where possible."  <u>Id.</u>

"But an equally valid rule is that an unambiguous policy requires no construction, and its plain terms must be given full effect even though they are

beneficial to the insurer and detrimental to the insured." Woodmen of World Life

Ins. Soc. v. Etheridge, 154 S.E.2d 369, 372 (Ga. 1967).  Accordingly, "[c]ourts

have no more right by strained construction to make an insurance policy more

beneficial by extending the coverage contracted for than they would have to

increase the amount of coverage." Collier v. State Farm Mut. Auto. Ins. Co., 549

S.E.2d 810, 812 (Ga. Ct. App. 2001) (quoting Burnette v. Ga. Life & Health Ins.

Co., 379 S.E.2d 188 (Ga. Ct. App. 1989)).  A question of "[i]nsurance policy

interpretation is appropriately decided at summary judgment." Auto-Owners Ins.

Co. v. Cribb, No. 17-cv-106, 2019 WL 451555, at *4 (N.D. Ga. Feb. 5, 2019)

(citing Giddens v. Equitable Life Assurance Soc'y of the U.S., 445 F.3d 1286,

1297 (11th Cir. 2006)).

The Court undertakes the analysis of the Policy with these principles in mind.

## C. Sovereign Immunity Waiver

The parties disagree about whether the Policy provides coverage beyond the

statutory waiver of sovereign immunity.  The central provision at issue is

Endorsement 10, entitled "Non-Waiver of Governmental Immunity," which

provides:

> It is understood and agreed that the ASSURED shall not waive, either
> in the adjustment of claims or in the defense of SUIT(S) against the
> ASSURED, any governmental immunity, of the ASSURED, unless
> Underwriters and the ASSURED mutually agree, in writing, to do so.

[Doc. 35-2, p. 17].

The Supreme Court of Georgia recently found that similar provisions contained in a city's insurance policy were sufficient to prevent waiver of sovereign immunity beyond the statutory limit.  Atl. Specialty Ins. Co., 869 S.E.2d at 500.  In Atlantic, the policy at issue included immunity endorsements indicating that the parties did not intend for the contract to waive sovereign immunity.  Id. at 494.  The first set of endorsements stated that the insurance company "has no duty to pay damages . . . under this policy unless the defenses of sovereign and governmental immunity are inapplicable to you."  Id.  The second set provided that "[t]his policy . . . does not constitute, nor reflect an intent . . . to waive or forego any defenses of sovereign and governmental immunity . . . ."  Id.

In analyzing whether that policy waived sovereign immunity beyond the $700,000 provided for by statute, the Supreme Court of Georgia looked to the policy's language and found that it clearly did not cover claims for damages to which the defenses of sovereign and governmental immunity applied.  Id. at 498. Thus, the court found that the city did not waive sovereign immunity through its purchase of the policy because it did not "purchase insurance coverage for the [p]laintiffs' asserted claims above the applicable automatic sovereign immunity waiver of $700,000."  Id. at 500.

Here, the Policy contains Endorsement 10, a provision that is similar to those in <u>Atlantic</u>—but not the same.  As a result, Plaintiffs attempt to distinguish this case by arguing that Endorsement 10 is phrased as a *future* obligation of the parties rather than an affirmative statement about the nature of the contract.  Thus, Plaintiffs contend, the Policy requires (or, as Municipal Plaintiff argues, could require) that Municipal Plaintiff raise sovereign immunity as a defense in certain future contexts—namely, adjustment of claims or defense of suits—while simultaneously operating as a waiver of sovereign immunity up to $1,800,000.  Moreover, Plaintiffs argue that unlike in <u>Atlantic</u>, the Policy does not include a provision explicitly stating that the Policy does not reflect an intent to waive sovereign immunity.  So, Plaintiffs aver, it is at best ambiguous as to whether sovereign immunity is waived.

Plaintiffs are correct that the Policy does not include a provision expressly stating that it does not reflect an intent to waive sovereign immunity, as in <u>Atlantic</u>.  However, the only reasonable interpretation of Endorsement 10 leads to the same result.  Endorsement 10—as a condition to coverage[7]—clearly and unambiguously

---

[7] Municipal Plaintiff has not disputed that Endorsement 10 operates as a condition precedent to coverage, meaning that rights under the Policy would not accrue if that condition were violated.  <u>See, e.g.</u>, <u>Wolverine Ins. Co. v. Sorrough</u>, 177 S.E.2d 819, 822 (Ga. App. 1970).

states that Municipal Plaintiff *shall not* waive *any* governmental immunity.  Stated a different way, if Municipal Plaintiff were to unilaterally waive governmental immunity, Defendant would have no duty to indemnify under the Policy.  Thus, by its clear terms, Endorsement 10 serves the same purpose as the immunity endorsements in Atlantic—that is, to provide that unless otherwise agreed, the insurer will not cover claims for damages to which a defense of governmental immunity applies.  See id. at 498.  In the instant case, in light of the statutory waiver, this means claims *over $700,000* arising out of the negligent use of a covered motor vehicle.[8]

Such a provision necessarily reflects an intent not to waive governmental immunity.  Otherwise, the contract must be read to mean that, simply by entering into it, the parties both intended to waive sovereign immunity *up to the full amount of applicable coverage* while also simultaneously conditioning coverage on *non-waiver* of the same.  The Court does not view this as a reasonable interpretation, and it is not authorized to strain the construction of a contract so as to discover an ambiguity.  See Triple Eagle Assocs., Inc., 704 S.E.2d at 195–96 (Ga. Ct. App. 2010); see also Ace Am. Ins. Co. v. Wattles Co., 930 F.3d 1240, 1253 (11th Cir.

---

[8] Under 36-92-2(a)(3), "the defense[] of . . . governmental immunity [is] clearly not applicable to losses from the [p]laintiffs' claims up to $700,000."  Id.

2019) ("'[A]mbiguity is not to be created by lifting a clause or a portion of the contract out of context,' or by making 'hypercritical constructions,' and the 'natural, obvious meaning is to be preferred over any curious, hidden meaning which nothing but the exigency of a hard case and the ingenuity of a trained and acute mind would discover.'" (quoting <u>Payne v. Middlesex Ins. Co.</u>, 578 S.E.2d 470, 472 (Ga. Ct. App. 2003))).

Ultimately, the Supreme Court of Georgia's decision in <u>Atlantic</u> controls. Under a plain reading of Endorsement 10, the Policy is capable of only one reasonable interpretation:  the Policy conditions coverage on non-waiver of sovereign immunity and, as such, does not cover claims to the extent sovereign immunity applies.[9]  Accordingly, as in <u>Atlantic</u>, this Court finds that Municipal Plaintiff did not purchase insurance coverage for the asserted claims above the applicable automatic sovereign immunity waiver of $700,0000.  <u>See</u> <u>Atl. Specialty Ins. Co.</u>, 869 S.E.2d at 497–500.

---

[9] Moreover, even if the Court were to find that the language is subject to multiple interpretations, Georgia law still does not support Plaintiffs' highly strained read, as it would render Endorsement 10 meaningless—with Defendant requiring that Municipal Plaintiff raise a defense of sovereign immunity to no practical avail, having already waived that defense up to the full extent of applicable limits (and, thus, Defendant's full potential indemnity obligation).  <u>See</u> <u>Allstate Ins. Co. v. Airport Mini Mall, LLC</u>, 265 F. Supp. 3d 1356, 1366 (N.D. Ga. 2017) (explaining that in construing an insurance policy under Georgia law, courts "should . . . avoid an interpretation of [an insurance] policy which renders portions of the policy language meaningless").

### D. Impact of Retentions

Having established that its purchase of the Policy did not waive Municipal Plaintiff's sovereign immunity beyond the $700,000 statutory limit, the Court now briefly addresses the parties' arguments regarding the impact of the applicable retentions.  Upon review of all relevant briefings, it appears that Defendant and Municipal Plaintiff—for the most part—agree upon how the Policy's retentions impact Municipal Plaintiff's payment obligations.  See [Docs. 33-3, 35, 38].

Indeed, in its motion, Defendant states that it "seems to be undisputed" that Defendant's duty to indemnify Municipal Plaintiff "is only triggered after [Municipal Plaintiff] exhausts its $300,000 combined Self-Insured Retention and Corridor Retention."  [Doc. 33-3, p. 3].  And in its response to Defendant's motion, Municipal Plaintiff echoes the same:  "To the extent that the Parties now clearly agree that the $700,000 is triggered after the exhaustion of the $300,000 [in retentions], the issue is moot."  [Doc. 35, p. 12].

Although it is uncertain whether any lingering dispute on this issue remains, should one still exist, it appears be whether the maximum award available to Tort Plaintiffs is altered by the retentions.  Specifically, Municipal Plaintiff argues that "once it pays the $300,000, [Defendant] is responsible for at least the next

$700,000 of coverage bringing the total amount that any one claimant could potentially recover under the Policy to $1 million." [Doc. 35, p. 11].

As outlined above, the Court has already found that purchase of the Policy did not waive sovereign immunity beyond the applicable statutory waiver. Plaintiffs point to no language in the Policy or other authority suggesting that the retentions alter the statutory cap.  Thus, where the statutory waiver governs, a tort claimant obtaining the maximum award for any one occurrence would receive $700,000.  See O.C.G.A. § 36-92-2(a) ("The sovereign immunity of local government entities for a loss arising out of claims for the negligent use of a covered motor vehicle is waived up to . . .  an aggregate amount of $700,000.00 because of bodily injury or death of two or more persons in any one occurrence."). Accordingly, assuming Tort Plaintiffs are ultimately owed the full $700,000 that is waived under the statute, whether Defendant is obligated to indemnify Municipal Plaintiff for $700,000 or some lesser amount depends upon whether Municipal Plaintiff has already exhausted the SIR and Corridor Retention through other applicable costs (e.g., defense costs).[10]

---

[10] The question of what costs satisfy the appliable retentions is not presently before this Court, so the Court offers no opinion on the issue.  However, the parties seem to agree, at least, that defense costs would apply.  See [Doc. 35, p. 10]; [Doc. 38, pp. 14–15].

### E. Additional Arguments

Finally, Tort Plaintiffs ask this Court to declare that—irrespective of the terms of the Policy—Municipal Plaintiff has waived its sovereign immunity in the amount of $1,800,000.  This issue is currently being litigated in the Underlying Suit and is not properly before this Court.  It was not raised in the Complaint for Declaratory Judgment nor at any other point prior to Tort Plaintiffs' summary judgment response, so the Court declines to address it at this time.  See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

### CONCLUSION

For the foregoing reasons, this Court **HEREBY GRANTS** Defendant's Motion for Summary Judgment [Doc. 33].  The Court **DECLARES** that the Policy does not waive sovereign immunity beyond the $700,000 statutory limit; thus, Defendant's indemnity obligation under the Policy is no more than $700,000 less any non-exhausted retention payments.  The Clerk is **DIRECTED** to close this case.

**SO ORDERED** this 28th day of March, 2024.

J. P. BOULEE
United States District Judge